**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---:|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>**UNITED STATES DISTRICT**<br>**JUDGE** | **MARTIN LUTHER KING**<br>**COURTHOUSE**<br>**50 WALNUT ST. ROOM 2060**<br>**NEWARK, NJ 07101**<br>**973-297-4903** |

April 30, 2018

VIA ECF

**LETTER ORDER**

  Re: Atain Specialty Insurance Company v. Royal Corporation, Inc. d/b/a Royal Motel, Ltd., et al.
     Civil Action No. 17-5045

Dear Litigants:

  Before the Court is Defendant Susan Teixeira's ("Ms. Teixeira" and, collectively with Defendants Royal Corporation, Inc. d/b/a Royal Motel, Ltd. ("Royal Motel"), Mark Dabrowski, Rasheed Powell, and Rodrigo Cavallari ("Mr. Cavallari"), "Defendants") Motion to Dismiss Plaintiff Atain Specialty Insurance Company's ("Plaintiff" or "Atain") Complaint, ECF No. 1. For the reasons set forth herein, the motion is **GRANTED**.

  **I.** **BACKGROUND**

  The underlying incident giving rise to this lawsuit occurred on March 8, 2012, when Ms. Teixeira and Mr. Cavallari allegedly checked into the Royal Motel, were attacked at gunpoint by an individual, and were subjected to assault, battery, sexual assault, and rape at his hands ("2012 Incident"). Compl. ¶¶ 10-13. On April 7, 2014, Ms. Teixeira and Mr. Cavallari sued Royal Motel and its principal, Mr. Dabrowski, in the New Jersey Superior Court, Essex County, alleging that Royal Motel was negligent and had breached its contractual obligations in connection with the 2012 Incident (the "Litigation Matter"). Id. ¶ 21. On January 14, 2015, Royal Motel filed a Third-Party Complaint against Plaintiff in the Litigation Matter, seeking insurance coverage in connection with the 2012 Incident. Decl. of Counsel ¶¶ 3, 5, ECF No. 15.1. Plaintiff was Royal Motel's general liability insurer at the time of the incident. Compl. ¶ 14.

  On March 6, 2015, discovery was stayed in the Litigation Matter because the prosecutor's file relating to the criminal investigation was unavailable. Counsel Decl. ¶¶ 6-7. After two years of the stay, the parties were informed the Litigation Matter would receive a trial date despite the fact that no discovery had been conducted and the criminal file was still unavailable. Id. ¶ 10. In response, counsel for Plaintiff drafted, on behalf of all parties, a Stipulation of Dismissal without prejudice, with the mutual understanding that the Litigation Matter would be re-opened at the conclusion of the criminal matter. Id. ¶¶ 11-12. To date, the criminal matter has apparently not been resolved, and the Litigation Matter has not yet been re-opened.

1

Plaintiff now seeks, in effect, to have the Court resolve the insurance coverage portion of the Litigation Matter.  On July 11, 2017, Plaintiff brought this action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq. (the "DJA"), seeking "a judgment ordering, declaring, and adjudicating that . . . Atain is not obligated to defend or indemnify defendants Royal & Dabrowski for any past or future claims asserted against them by defendants Susan Teixeira and Rodrigo Cavallari and arising out of the March 8, 2012 incident."  Id. ¶¶ 37-52.  Plaintiff argues that it is entitled to this declaratory relief because its insurance coverage of Royal Motel does not apply to the personal injuries allegedly suffered by Ms. Teixeira and Mr. Cavallari.  Compl. ¶¶ 18-19, 35-36.

On September 9, 2017, Ms. Teixeira filed the present motion to dismiss the Complaint for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  ECF No. 14.  She contends that: (1) the DJA confers discretionary, rather than compulsory, jurisdiction on the Court, and prevailing law weighs heavily in favor of the Court declining jurisdiction; (2) Plaintiff's claims do not give rise to a case or controversy, or, alternatively, that Plaintiff's claims are not ripe for adjudication; and (3) the Complaint does not state a claim upon which relief may be granted.  Def's. Br. at 4, 7-16.[1]

## II.  LEGAL STANDARD

The DJA's abstention doctrine was set forth in Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942) and further explained in Wilton v. Seven Falls Co., 515 U.S. 277 (1995).  Pursuant to the Brillhart-Wilton abstention doctrine, "when a federal suit is brought under the Federal Declaratory Judgments Act, presenting only questions of local laws, the court is under 'no compulsion to exercise . . . jurisdiction' if a parallel state court proceeding would address the matters in controversy between the parties."  Marshall v. Lauriault, 372 F.3d 175, 183 (3d Cir. 2004) (quoting Brillhart, 316 U.S. at 495).  Of course, district courts are generally obligated to exercise jurisdiction, but "[d]istinct features of the Declaratory Judgment Act . . . justify a standard vesting district courts with greater discretion in declaratory judgment actions."  Wilton, 515 U.S. at 286.

In Reifer v. Westport Ins. Corp., the Third Circuit clarified that "[t]he existence of pending parallel state proceedings militates significantly in favor of declining jurisdiction," and "the absence of pending parallel state proceedings militates significantly in favor of exercising jurisdiction," but neither the existence or absence of such proceedings is dispositive.  751 F.3d 129, 144-45 (3d Cir. 2014).  Reifer also set forth a non-exhaustive list of factors that a district court should consider, to the extent they are relevant, in deciding whether to exercise its discretionary jurisdiction under the DJA:

1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
2) the convenience of the parties;
3) the public interest in settlement of the uncertainty of obligation;
4) the availability and relative convenience of other remedies;
5) a general policy of restraint when the same issues are pending in a state court;
6) avoidance of duplicative litigation;

---

[1] Because the Court agrees that it should decline to exercise its discretionary jurisdiction under the DJA, it need not address Ms. Teixeira's alternative arguments for dismissal.

7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and

8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

Id. at 146. A district court's consideration of the Reifer factors "should be articulated in a record sufficient to enable . . . abuse of discretion review." Id. at 147.

### III. ANALYSIS

Here, the Court is guided by the Reifer factors in determining whether to exercise its jurisdiction under 28 U.S.C. § 2201. Ms. Teixeira argues the Court should "refuse to exercise jurisdiction as the claims raised herein are governed by state law and there was a parallel state proceeding which is about to be re-filed in keeping with the parties stipulation of dismissal." Def's. Br. at 4. Application of the Reifer factors compels the Court to decline jurisdiction and dismiss the Complaint without prejudice.

First, as noted in the Complaint, the Litigation Matter was "dismissed without prejudice, while the parties await the outcome of the criminal charges filed against [the] defendant." Compl. ¶ 34. These are precisely the sort of "pending parallel state proceedings" that weigh strongly in favor of declining jurisdiction under the DJA. See Reifer, 751 F.3d at 144-45. Though the Litigation Matter was technically dismissed without prejudice, it is apparent from the face of the Complaint that the issues are still pending, and that the parties are simply awaiting the outcome of the criminal charges. Thus, declining jurisdiction here promotes "judicial economy by avoiding duplicative and piecemeal litigation." State Auto Ins. Cos. v. Summy, 234 F.3d 131, 135 (3d Cir. 2000) (citing Mitcheson v. Harris, 955 F.2d 235, 240 (4th Cir. 1992)).

Moreover, the Court is not convinced that federal interests would be promoted by the Court's exercise of jurisdiction. See Summy, 234 F.3d at 136. Plaintiff's claims present no federal question, and Plaintiff has failed to provide any reason, other than its own desire to obtain a declaratory judgment as soon as possible, why the state forum is not fully equipped to resolve the purely state law issues. See id. The likelihood that a federal court declaration would resolve the uncertain insurance coverage obligations while the underlying liability claim awaits resolution is far outweighed by the likely duplicative costs and the potential for "vexatious" and "gratuitous interference" with the unresolved Litigation Matter. Id. Plaintiff's desire for a declaratory judgment alone "has no special call on the federal forum." Id.

### IV. CONCLUSION

Based on the foregoing, Defendant's motion to dismiss, ECF No. 14, is **GRANTED**.

**IT IS** on this 30th day of April, 2018,

**ORDERED** that the Complaint, ECF No. 1, is **DISMISSED** without prejudice. If, within 30 days after the criminal matter is resolved, Ms. Teixeira and Mr. Cavallari choose not to re-open the Litigation Matter, Plaintiff may re-file this action.

*/s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**United States District Judge**